**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ X

CORPUS CHRISTI INDEPENDENT SCHOOL
DISTRICT,

                                   Plaintiff,

                        v.

AMRISC, LLC; CERTAIN UNDERWRITERS AT
LLOYDS, LONDON SUBSCRIBING TO
CERTIFICATE NOS. B123017AMR1042,
B123017AMR1139, and B123017AMR252 FORMING
PART OF POLICY NO. AMR-37265-03; INDIAN
HARBOR INSURANCE COMPANY; QBE
SPECIALTY INSURANCE COMPANY;
STEADFAST INSURANCE COMPANY; GENERAL
SECURITY INDEMNITY COMPANY OF
ARIZONA; UNITED SPECIALTY INSURANCE
COMPANY; LEXINGTON INSURANCE
COMPANY; PRINCETON EXCESS AND SURPLUS
LINES INSURANCE COMPANY;
INTERNATIONAL INSURANCE COMPANY OF
HANNOVER SE; AXIS SURPLUS INSURANCE
COMPANY; RSUI INDEMNITY COMPANY; FIRST
SPECIALTY INSURANCE CORPORATION; ARCH
SPECIALTY INSURANCE COMPANY;
EVANSTON INSURANCE COMPANY; ROCKHILL
INSURANCE COMPANY; SCOTTSDALE
INSURANCE COMPANY,

                             Defendants.

Case No. 1:19-cv-00301 (ARR)

------------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO STAY THIS ACTION AND COMPEL ARBITRATION</u>**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ...................................................................................................................4

       1.     The Insurance Policy's Arbitration Clause ................................................4

       2.     The Parties' Dispute Under the Policy......................................................5

       3.     Plaintiff's Arbitration Demand .................................................................7

       4.     Plaintiff Files This Action........................................................................8

ARGUMENT .........................................................................................................................9

I.     THE FAA REQUIRES THAT THE COURT STAY THIS ACTION AND COMPEL
     ARBITRATION OF THE PARTIES' DISPUTE.................................................................9

     A.     The Dispute Falls Squarely Within the Scope of the Arbitration Clause .............11

           1.     The Policy's Arbitration Clause is "Broad"...................................11

           2.     The Policy's "Broad" Arbitration Clause Covers the Parties'
                Dispute .........................................................................................14

                a.     Count 1 is arbitrable............................................................14

                b.     Count 2 is arbitrable............................................................15

                 c.     Counts 3, 4, and 8 are arbitrable .........................................18

                d.     Counts 5, 6, and 7 are arbitrable .........................................19

CONCLUSION....................................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aeronaves de Mexico, S.A. v. Triangle Aviation Servs., Inc.*,
  389 F. Supp. 1388 (S.D.N.Y. 1974), *aff'd*, 515 F.2d 504 (2d Cir. 1975) ...............................18

*Arciniaga v. Gen. Motors Corp.*,
  460 F.3d 231 (2d Cir. 2006)..................................................................................................9, 10

*B.D. Cooke & Partners Ltd. v. Certain Underwriters at Lloyd's, London*,
  606 F. Supp. 2d 420 (S.D.N.Y. 2009).........................................................................................16

*Boone v. Toyota Motor Credit Corp.*,
  No. 01 CIV. 737 (RCC), 2003 WL 1740452 (S.D.N.Y. Apr. 2, 2003) ...................................10

*Carr v. Citibank, N.A.*,
  No. 15-CV-6993 (SAS), 2015 WL 9598797 (S.D.N.Y. Dec. 23, 2015) ...........................12, 19

*Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.*,
  No. 18 CIV. 10382 (CM), 2019 WL 760802 (S.D.N.Y. Feb. 6, 2019) ...................................13

*In re Chateaugay Corp.*,
  988 F.2d 322 (2d Cir. 1993)........................................................................................................18

*China Auto Care, LLC v. China Auto Care (Caymans)*,
  859 F. Supp. 2d 582 (S.D.N.Y. 2012)..................................................................................12, 13

*China Media Express Holdings, Inc. by Barth v. Nexus Exec. Risks, Ltd.*,
  182 F. Supp. 3d 42 (S.D.N.Y. 2016)..................................................................................13, 18, 19

*Collins & Aikman Prods. C. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 2005)...........................................................................................2, 3, 14, 17, 20

*David L. Threlkeld & Co. v. Metallgesellschaft, Ltd.*,
  923 F.2d 245 (2d Cir. 1991)........................................................................................................10

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985)........................................................................................................................9

*Genesco, Inc. v. T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987)........................................................................................................17

*Great Lengths Universal Hair Extensions S.r.L. v. Gold*,
  No. 16-CV-193(GBD) (GWG) 2017 WL 1731184 (S.D.N.Y. Mar. 29, 2017)................16, 17

*Hartford Accident & Indem. Co. v. Equitas Reins. Ltd.*,
    200 F. Supp. 2d 102 (D. Conn. 2002) ..................................................................15

*Holick v. Cellular Sales of New York, LLC*,
    802 F.3d 391 (2d Cir. 2015) ..............................................................................10

*Howsam v. Dean Witter Reynolds*,
    537 U.S. 79 (2002) .............................................................................................15

*Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machs.,*
    *Local Union No. 550*,
    No. 96 CV 4454 (SJ), 1998 WL 19974 (E.D.N.Y. Jan. 20, 1998), *aff'd*, 167
    F.3d 764 (2d Cir. 1999) ................................................................................19, 20

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ............................................................................9, 10

*In re Kinoshita*,
    287 F.2d 951 (2d Cir. 1961) ..............................................................................13

*Long v. Amway Corp.*,
    306 F. Supp. 3d 601 (S.D.N.Y. 2018) ...............................................................14

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001) ..........................................................................11, 14

*Martens v. Thomann*,
    273 F.3d 159 (2d Cir. 2001) ..............................................................................15

*Mehler v. Terminix Int'l Co. L.P.*,
    205 F.3d 44 (2d Cir. 2000) ...............................................................................14

*Mills v. Green*,
    159 U.S. 651 (1895) ..........................................................................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..............................................................................................10

*Moss v. Rent-A-Ctr., Inc.*,
    No. 06-CV-3312(SLT)(KAM), 2007 WL 2362207 (E.D.N.Y. Aug. 15, 2007) ....................14

*R.J. Wilson & Assocs., Ltd. v. Underwriters at Lloyd's London*,
    No. 08-CV-0322 DRH, 2009 WL 3055292 (E.D.N.Y. Sept. 21, 2009) ...............................12

*Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
    306 F. Supp. 2d 346 (S.D.N.Y. 2004) ...............................................................16

*Rocanova v. Equitable Life Assurance Soc'y of the U.S.*,
    83 N.Y.2d 603 (1994) ...................................................................................................17

*S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.*,
    745 F.2d 190 (2d Cir. 1984) ...........................................................................................13

*Smith Barney Shearson Inc. v. Sacharow*,
    91 N.Y.2d 39 (1997) .......................................................................................................10

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002) .............................................................................................12

*Town of Amherst v. Custom Lighting Servs., LLC*,
    No. 07-CV-261S, 2007 WL 4264608 (W.D.N.Y. Nov. 30, 2007) .........................................16

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997) .............................................................................................11

*Ytech 180 Units Miami Beach Investments LLC v. Certain Underwriters at
    Lloyd's, London*,
    --- F.Supp.3d ----, No. 18-24770-CV, 2019 WL 580539 (S.D. Fla. Feb. 12,
    2019) .................................................................................................................3, 12, 17

**Statutes**

Federal Arbitration Act Sections 3 and 4, 9 U.S.C. § 1, *et seq.* ......................................................1

9 U.S.C. § 2 ..............................................................................................................................9, 10

Defendants AmRisc LLC, Certain Underwriters at Lloyd's, London subscribing to Certificate Nos. B123017AMR1042, B123017AMR1139, and B123017AMR252 forming part of Policy No. AMR-37265-03; Indian Harbor Insurance Co.; QBE Specialty Insurance Co.; Steadfast Insurance Company; General Security Indemnity Co. of Arizona; United Specialty Insurance Co.; Lexington Insurance Co.; Princeton Excess & Surplus Lines Insurance Co.; International Insurance Co. of Hannover, SE; Axis Surplus Insurance Co.; RSUI Indemnity Co.; First Specialty Insurance Corporation; Arch Specialty Insurance Company; Evanston Insurance Company; Rockhill Insurance Company; and Scottsdale Insurance Company (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, to stay this action and compel arbitration.

## PRELIMINARY STATEMENT

Plaintiff Corpus Christi Independent School District ("Plaintiff") seeks to have its cake and eat it too by initiating an arbitration, *and* having this Court make rulings on issues that are specifically reserved to those arbitrators under the contract between Plaintiff and Defendants (together, the "Parties") and applicable law.  Having already submitted the Parties' dispute to arbitration as required by the Parties' agreement, Plaintiff also filed the Complaint in this Court, setting forth eight causes of action, all arising from the same events and facts.  This very unusual procedural maneuver should not be sanctioned:  the entirety of these proceedings should be referred to arbitration as required by the clear and unambiguous terms of the Parties' agreement.

Plaintiff is an insured under commercial property insurance policies issued by Defendants (collectively, the "Policy"), which contains a broad arbitration clause mandating that *all* disputes between the Parties be resolved in arbitration.  The Parties' underlying dispute arises out of a

disagreement about whether Plaintiff is owed additional payments on the claims it filed under the Policy.  In accordance with the Policy, Plaintiff submitted this dispute to arbitration on January 15, 2019 by serving an arbitration demand (the "Arbitration Demand") on each of the Defendants[1] herein and selecting an arbitrator.  On February 13, 2019, Defendants selected the second arbitrator and, on that date the arbitration panel was formed.

At no point has Plaintiff ever stated, suggested, or intimated that this dispute was not arbitrable.  Nonetheless, on the same day that Plaintiff served its Arbitration Demand, it also, inexplicably, filed this duplicative federal action.  Remarkably, in this action, Plaintiff brings a claim for "Arbitration" (Count 1), alleging that "[t]his is an action for Arbitration" and purports to move this Court "to stay the litigation and to compel the arbitration [of] the contract claims disputed between the parties in accordance with the arbitration provisions contained within the subject insurance policy," even conceding that "a judicial order compelling arbitration is **mandatory**."  (Compl. ¶¶ 72, 77.)  Plaintiff, however, also asserts additional common law and statutory claims (Counts 3-8), all of which are subject to the same arbitration agreement.  Finally, Plaintiff also brings a confused and theoretical "declaratory judgment" claim (Count 2), inviting this Court to offer an advisory opinion on choice of law, statute of limitations, and damages issues for the claims already set forth in Plaintiff's Arbitration Demand, and specifically within the power of the arbitration panel to decide.

The Second Circuit has prescribed a straightforward two-step analysis to adjudicate this Motion.  *Collins & Aikman Prods. C. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 2005).  First,

---

[1] The Arbitration Demand does not name three of the seventeen Defendants:  AmRisc, LLC; Evanston Insurance Company; and Scottsdale Insurance Company.  Nonetheless this Motion applies with equal force to those three defendants as well.  Plaintiff does not dispute that it has entered into identical arbitration agreements with *all* Defendants, that it asserts identical claims against *all* Defendants, and that its claims are arbitrable with respect to *all* Defendants.

because the arbitration clause in the Policy commits "all" matters in difference to arbitration, it is a "broad" arbitration clause.  Next, because the arbitration clause is a "broad" one, there is a "presumption of arbitrability" that Plaintiff can only rebut by demonstrating that the Parties' dispute "present[s] no question involving construction of the [Policy], and no questions in respect of the [P]arties' rights and obligations under it." *Id.*  Plainly here, Plaintiff cannot do that.  Not only has Plaintiff already submitted the exact claims to arbitration, it expressly concedes in its Complaint that the dispute is arbitrable.  (Compl. ¶ 75.)  In any event, all of Plaintiff's claims are arbitrable because they require an interpretation of the Policy.  The underlying dispute revolves entirely around the calculation of the damages payable to Plaintiff for its coverage under the Policy.  Such disputes can be resolved *only* by resort to the terms of the Policy (including the agreed-upon formulas and numerical inputs).

Finally, to the extent Plaintiff contends that the Court should issue a "declaratory judgment" opining on statute of limitations, choice of law, and damages, its request is barred by the FAA.  All three issues require construction of the Policy and the Parties' rights and obligations under it, and thus it is well settled that the Policy's "broad" arbitration clause requires that the arbitration panel, not this Court, decide them.  Indeed, just one month ago the U.S. District Court for the Southern District of Florida addressed an identically-worded arbitration agreement and held that the clause "give[s] an arbitrator exclusive authority to resolve any dispute relating to the Policy," including, for example, the choice of law question at issue in Plaintiff's "declaratory judgment" count.  *Ytech 180 Units Miami Beach Investments LLC v. Certain Underwriters at Lloyd's, London*, --- F.Supp.3d ----, No. 18-24770-CV, 2019 WL 580539, at *8 (S.D. Fla. Feb. 12, 2019) (granting motion to compel arbitration of all claims).

The Florida court's ruling is consistent with clear Second Circuit precedent, and this Court should rule the same.

## BACKGROUND

**1.      The Insurance Policy's Arbitration Clause**

In 2017, Plaintiff procured commercial property insurance from Defendants by entering into the Policy, which provided coverage from April 30, 2017 through April 30, 2018.  (Compl. ¶ 29.)  The terms of the Policy define, among other things, Defendants' coverage obligations and the methodology for calculating loss and damages payable by them.  (*See* ECF No. 3-1 at 18-23.) Of particular importance here, the Policy also contains an exceedingly broad arbitration clause (the "Arbitration Clause"), which states:

> ARBITRATION CLAUSE: *All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.*
>
> Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days or receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.
>
> Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.

. . . .

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

. . . .

(ECF No. 3-5 at 14; Compl. ¶ 32 (emphasis added).)

### 2. The Parties' Dispute Under the Policy

In late 2017, Plaintiff tendered a claim for coverage, asserting that it had suffered property damage. (Compl. ¶ 37.) Defendants promptly assigned claim numbers and dispatched an adjuster to inspect Plaintiff's insured property and determine the extent and value of damages. (Compl. ¶¶ 39, 40.) Within a matter of months, Defendants sent Plaintiff payments totaling $189,371.97 for the full amount of the undisputed cost to replace their damaged property, which Plaintiff accepted. (Ex. A[2]; Compl. ¶ 41.) Following an extensive investigation, during which the adjuster worked with an engineering firm to inspect the properties and the adjuster concluded that Plaintiff's damages totaled in excess of $12,000,0000. (*Id.* ¶54 .)

In an effort to resolve the dispute, Defendants sent numerous letters and reports to Plaintiff explaining their coverage determination and calculation of amounts due to Plaintiff under the terms of the Policy. Moreover, Defendants even agreed to retain a second engineering

---

[2] Exhibits refer to the exhibits annexed to the Declaration of Andrew W. Stern in Support of Defendants' Motion to Stay this Action and Compel Arbitration, filed contemporaneously herewith.

firm to conduct additional testing and inspections, and then met with Plaintiff to discuss the results of the investigation.  (Compl. ¶¶ 45-48, 50-52, 56.)

On October 12, 2018, Plaintiff and Defendants[3] entered into a tolling agreement (the "Tolling Agreement") that extended the statute of limitations for certain claims and defenses to January 15, 2019.  (ECF No. 1-2.)  The Tolling Agreement tolls a cause of action by Plaintiff only if it is both a "contractual claim" between the Parties and if it relates to the specific claims made by Plaintiff under the Policy.

On October 18, 2018, Plaintiff submitted an "Amended Proof of Loss" demanding coverage and payment beyond the amounts that had already been paid by Defendants, and included an unsupported assertion that Plaintiff had suffered more than $70 million in damages. (Compl. ¶ 61.)  Accordingly, the instant dispute arose between the Parties concerning the amount that Plaintiff claims Defendants owe under the Policy.

On November 9, 2018, Defendants asked Plaintiff to provide supporting documentation for the sums that it claimed were due under the Policy, and offered to hold a meeting between the Parties' experts to explain, and hopefully resolve, the significantly different computations of loss under the Policy.  (Compl. ¶ 62.)  By letter dated December 7, 2018, Plaintiff responded by providing only limited additional information, and ignored Defendants' invitation for a meeting between the Parties' experts.  (Compl. ¶ 63.)  On December 13, 2018, Defendants replied, and again requested that Plaintiff supply documentation that could support its new damages computation and the costs for which they sought reimbursement.  (Compl. ¶ 64.)

---

[3] With the exception that the same three Defendants mentioned above — AmRisc, LLC; Evanston Insurance Company; and Scottsdale Insurance Company — are not party to the Tolling Agreement.

On December 24, 2018, Defendants again wrote to Plaintiff and offered a meeting between the Parties' experts "to discuss the results of the testing conducted by Amtech and the methodology utilized by Amtech," and expressed concern about the deficiencies in Plaintiff's submissions, including that Plaintiff's so-called "Engineer's Report" was not even signed or endorsed by an engineer.  (Ex. B; Compl. ¶ 65.)  Plaintiff never responded to Defendants' letter.

### 3.    Plaintiff's Arbitration Demand

On January 15, 2019, Plaintiff served its Arbitration Demand commencing the arbitration proceeding (the "Arbitration").  (ECF No. 1-3.)  In its Arbitration Demand, Plaintiff, "demands Arbitration against Underwriters pursuant to the arbitration clause in the Compass Commercial Property Form," and concedes that the Arbitration Clause in the Policy governs the dispute between the Parties.  (ECF No. 1-3 at 2.)  Plaintiff demanded "to recover a sum no less than $70,757,042.32 as a result of covered damages to insured property," plus "all arbitration costs, including [Plaintiff]'s counsel's costs and expenses," "a sum in the treble amount of actual damages for statutory penalties" as well as interest and attorneys' fees for alleged violations of Chapters 541 and 542 of the Texas Insurance Code.  (*Id.* at 3.)  Further, Plaintiff named Arbitrator Keith J. Lambdin, Esq. of Agnant & Lambdin LLC as its nominee to the arbitration panel that will adjudicate the Parties' dispute.  (*Id.*)

Since then, the Arbitration has continued to move forward as contemplated by the Parties' agreement.  By letter on February 13, 2019, Defendants acknowledged Plaintiff's nominee to the arbitration panel and appointed Defendants' nominee, Judge Wayne Andersen, who served as a U.S. District Judge for the Northern District of Illinois for 19 years before his retirement in 2010.  (Ex. C.)

4.      **Plaintiff Files This Action**

The very same day Plaintiff commenced the Arbitration, it also inexplicably filed this duplicative lawsuit.  (Compl. ¶ 1.)  Plaintiff concedes that the Policy "between the parties contains an arbitration provision"; that "[Plaintiff] has demanded arbitration pursuant to the Federal Arbitration Act"; and that the FAA gives this Court subject matter jurisdiction over this Action.  (Compl. ¶¶ 2, 3, 25, 26, 32.)  In fact, Plaintiff purports to assert a cause of action for "Arbitration," which it designates as Count 1 in the Complaint.  (Compl. ¶¶ 71-77.)

In Count 1, Plaintiff alleges that "[t]his is an action for Arbitration" and purports to move this Court "to stay the litigation and to compel the arbitration [of] the contract claims disputed between the parties in accordance with the arbitration provisions contained within the subject insurance policy."  (Compl. ¶ 72.)  That is the same relief Defendants seek in this Motion.  Count 2 of the Complaint is for declaratory judgment, and requests that this Court issue advisory opinions relating to interpretation of the Arbitration Clause: "whether the statute of limitations to file suit is subject to New York Law or Texas law; whether extra contractual damages can be arbitrated; [and] whether New York law or Texas law is the proper law to decide the issue of extra contractual damages."[4]  (Compl. ¶ 80.)  All of these issues, to the extent they are in dispute, will be decided in the Arbitration that Plaintiff commenced.  Finally, Counts 3 through 8 in the Complaint simply allege the same contract claims for breach of the Policy and violations of Texas Insurance Code Chapters 541 and 542 that Plaintiff previously asserted in its Arbitration Demand.

---

[4] As discussed below, to the extent they are comprehensible, it is unclear that there is even a dispute regarding these issues.

As explained below, each of Plaintiff's claims is improper, and Defendants respectfully request that the Court stay this action and compel Plaintiff to proceed with the already-commenced Arbitration of this dispute.

## ARGUMENT

## I.   THE FAA REQUIRES THAT THE COURT STAY THIS ACTION AND COMPEL ARBITRATION OF THE PARTIES' DISPUTE

Plaintiff does not dispute the validity of the Arbitration Clause in the Policy.  To the contrary, in its Complaint, Plaintiff "prays that this Court enter a judgment compelling arbitration in accordance with the arbitration clause in the subject insurance policy," requests that this Court should "stay the litigation," and instructs that pursuant to the FAA "a judicial order compelling arbitration is ***mandatory***."  (Compl. ¶¶ 72, 77 (emphasis in original).)  Defendants agree, and respectfully submit that this should be the end of the matter in this Court:  under the FAA and well-established precedent, this Court must stay this action and compel arbitration of *all* of Plaintiff's claims.

As Plaintiff concedes in its Complaint, the arbitrability question presented by this lawsuit is governed by the FAA, given that the Policy at issue here necessarily involves interstate commerce.  *See* 9 U.S.C. § 2; Compl. ¶¶ 24, 26, 77.  The FAA was designed to "ensure judicial enforcement of privately made agreements to arbitrate."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219 (1985).  The FAA represents "a strong federal policy favoring arbitration as an alternative means of dispute resolution."  *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (citation omitted); *see Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the United States Court of Appeals for the Second Circuit has] often and emphatically applied").  Therefore, "under the FAA, 'any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'"[5] *JLM Indus.*, 387 F.3d at 171 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  The FAA requires that a contract provision to arbitrate disputes arising out of the contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.[6]

Under the FAA, the Court's inquiry into the arbitrability of a dispute is limited to the following threshold inquiries:  (1) whether a valid agreement or obligation to arbitrate exists; (2) whether the particular dispute sought to be arbitrated falls within the scope of the parties' agreements; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration.  *JLM Indus.*, 387 F.3d at 169.  In the case at bar, only the second inquiry is applicable, and the record compels a conclusion that the Parties' dispute must be determined by the arbitration panel that Plaintiff has already convened.[7]

---

[5] In fact, the strong federal policy favor of arbitration that is "emphatically applied" by the Second Circuit, *Arciniaga*, 460 F.3d at 234, is *even stronger* here because, as Plaintiff concedes, this is an action against "foreign insurer Defendants."  (Compl. ¶ 24.)  Accordingly, under Second Circuit precedent, Plaintiff is also required to present "forceful evidence to rebut the presumption of arbitrability."  *See Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 397 n.10 (2d Cir. 2015) ("[T]his Court has also required forceful evidence to rebut the presumption of arbitrability in the context of international arbitration agreements, [and] we reasoned that such an approach was correct because '[t]he policy in favor of arbitration is *even stronger* in the context of international business transactions' than the typical case.") (quoting *David L. Threlkeld & Co. v. Metallgesellschaft, Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991) (emphasis added).)

[6] This policy is in clear accord with the policy of the State of New York.  *See Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 49 (1997) (New York "favors and encourages arbitration").

[7] Here, Plaintiff does not challenge the validity or enforceability of the arbitration provision because not only does Plaintiff not include any such allegation in the Complaint, it affirmatively concedes that it entered into the Policy and is subject to the Arbitration Clause therein.  *See Boone v. Toyota Motor Credit Corp.*, No. 01 CIV. 737 (RCC), 2003 WL 1740452, at *3 (S.D.N.Y. Apr. 2, 2003) (addressing only the second and third inquiries because "[t]he parties do not dispute the fact that there is an arbitration agreement.").

A.       **The Dispute Falls Squarely Within the Scope of the Arbitration Clause**

That the entirety of the parties' dispute falls well within the broad scope of the

Arbitration Clause is not subject to reasonable dispute.  To determine whether Plaintiff's claim

falls within the scope of the Arbitration Clause, the Second Circuit has prescribed a two-step

inquiry.  *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d

Cir. 2001).  First, the court must "classify the particular clause as either broad or narrow."  *Id.*

Second, if an arbitration clause is broad, "there arises a presumption of arbitrability and

arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of

contract construction or the parties' rights and obligations under it."  *Id.* (internal quotations

omitted); *see also WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (a "broad"

arbitration clause creates a presumption of arbitrability that can be overcome only if "it may be

said with positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute").[8]

1.       The Policy's Arbitration Clause is "Broad"

Here, there can be no doubt about the breadth of the Arbitration Clause or its applicability

to Plaintiff's claims.  Indeed, Plaintiff does not contest the arbitrability of the dispute as outlined

in the Arbitration Demand.  The Arbitration Clause provides that "[a]ll matters in difference

between [the Parties] in relation to this insurance, including its formation and validity, and

whether arising during or after the period of this insurance, shall be referred to an Arbitration

Tribunal in the manner hereinafter set out."  (ECF. No. 1-3 at 3-4; Compl. ¶ 32.)  This language

---

[8] By contrast, "if reviewing a narrow clause, the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224 (citation omitted) (explaining that "[w]here the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview").  As explained below, this class of "narrow" arbitration clauses has essentially been eliminated by the Second Circuit and confined to one very precise formulation that is not at issue here.  Under any view of the law, the Arbitration Clause here is a "broad" one.

fits comfortably within what the courts of this Circuit have deemed to be a "broad" arbitration clause.

Agreements that commit "all" matters, claims, or disputes to arbitration are consistently held to contain "broad" arbitration clauses, particularly where, like here, they give specific examples of types of disputes, like as to "formation" and "validity," that are referred to arbitration. *See R.J. Wilson & Assocs., Ltd. v. Underwriters at Lloyd's London*, No. 08-CV-0322 DRH, 2009 WL 3055292, at *5 (E.D.N.Y. Sept. 21, 2009) ( "[t]he term 'all matters' lends to a broad reading of the arbitration clause" and "indicate[s] the parties' intention to submit all questions of arbitrability, including timeliness, to arbitration"); *Carr v. Citibank, N.A.*, No. 15-CV-6993 (SAS), 2015 WL 9598797, at *3 (S.D.N.Y. Dec. 23, 2015) (where agreement provides that "'*all* Claims are subject to arbitration,'" the "contract's arbitration clause is a broad one") (emphasis in original); *China Auto Care, LLC v. China Auto Care (Caymans)*, 859 F. Supp. 2d 582, 587 (S.D.N.Y. 2012) (arbitration clause that expressly covers disputes regarding the "validity" of the agreement "indisputably reaches collateral matters that require more than the textual interpretation of the contract"); *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35–36 (2d Cir. 2002) (agreement that required arbitration of "'all disputes relating to this Agreement (excepting any dispute relating to intellectual property rights),' must be classified as 'broad'").

Further, every court to have considered the precise text of the Arbitration Clause at issue here has ruled that it requires mandatory arbitration of all disputes.  As one U.S. District Court explained, "the only reasonable interpretation is that the Parties . . . agreed to give an arbitrator exclusive authority to resolve *any* dispute relating to the Policy." *Ytech 180 Units Miami Beach Investments LLC*, --- F.Supp.3d ----, 2019 WL 580539, at *8 (emphasis added) (granting motion

to compel arbitration of all claims, including as to choice of law).  Similarly, in *Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.*, No. 18 CIV. 10382 (CM), 2019 WL 760802, at \*4-5 (S.D.N.Y. Feb. 6, 2019), Judge McMahon rejected an insured's request to litigate its dispute with its insurer over denial of coverage.  The court found that the arbitration clause with the exact wording as this Arbitration Clause "is compulsory," and conclusively held:  "Under the plain terms of the Policy, any such dispute must be arbitrated. Period. End of story." *Id.*; *see id.* at \*6 (holding that the insured's effort to avoid arbitration "wastes this busy Court's time with [a] frivolous application").

Notably, the first step of the Court's two-party inquiry has been greatly simplified by the Second Circuit, which has all but eliminated the concept of "narrow" arbitration clauses.  As one court recently explained, "[i]n the Second Circuit, the class of arbitration clauses considered 'narrow,' is, functionally, a class of one." *China Auto Care, LLC*, 859 F. Supp. 2d at 586.  That "class of one" is the 1961 decision in *In re Kinoshita*, where the Second Circuit held that the clause "[i]f any dispute or difference should arise under this Charter," was not "sufficiently broad to encompass a dispute or controversy about an alleged fraudulent inducement of the contract [.]"  287 F.2d 951, 952–53 (2d Cir. 1961).  Since then, "the Second Circuit has repeatedly and expressly 'confine[d] *Kinoshita* to its precise facts.'" *China Auto Care, LLC*, 859 F. Supp. 2d at 586 (quoting *S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984)); *accord China Media Express Holdings, Inc. by Barth v. Nexus Exec. Risks, Ltd.*, 182 F. Supp. 3d 42, 49 (S.D.N.Y. 2016) ("In the Second Circuit, the 'narrow' arbitration clause is 'something of an endangered species.'") (citation omitted).

The Arbitration Clause here is without question a "broad" one, thus triggering "a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim

alleged implicates issues of contract construction or the parties rights and obligations under it." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224 (internal quotation marks omitted).

2. <u>The Policy's "Broad" Arbitration Clause Covers the Parties' Dispute</u>

Here, the Policy's broad Arbitration Clause requires arbitration of all Plaintiff's claims. To adjudicate whether a dispute is covered by a "broad" arbitration clause, the Second Circuit has set forth the following test:  Plaintiff can rebut the "presumption of arbitrability" only by demonstrating that its claims "present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it."  *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995); *see Long v. Amway Corp.*, 306 F. Supp. 3d 601, 610 (S.D.N.Y. 2018) ("if 'the agreement is a broad one, . . . the court must compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute'") (quoting *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (internal quotation marks omitted)).  Stated slightly differently, "[p]arties must arbitrate claims if their underlying factual allegations *touch on* issues encompassed by the arbitration agreement."  *Moss v. Rent-A-Ctr., Inc.*, No. 06-CV-3312(SLT)(KAM), 2007 WL 2362207, at *8 (E.D.N.Y. Aug. 15, 2007) (emphasis added).

Here, Plaintiff cannot seriously contest that all eight causes of action in Complaint "touch upon" the Policy.  Nor may Plaintiff claim that any of these claims presents "no question involving construction of the [Policy], and no questions in respect of the [P]arties' rights and obligations under it."  All of the claims therefore must be arbitrated.

a.     *Count 1 is arbitrable*

Count 1 is for "arbitration," which is not a recognized cause of action.  But, in any event, in that claim Plaintiff seeks the relief that Defendants seek in this Motion:  "a judgment compelling arbitration in accordance with the arbitration clause in the [Policy]" and that this

14

Court "stay the litigation." (Compl. ¶ 77.) Plaintiff's Count 1, as well as its prior Arbitration

Demand that commits these same claims to the arbitration panel are concessions that this dispute

is arbitrable and should be dispositive of this Motion. *See, e.g.*, *Hartford Accident & Indem. Co.*

*v. Equitas Reins. Ltd.*, 200 F. Supp. 2d 102, 108 (D. Conn. 2002) ("If the adverse party has not

refused to arbitrate, or will agree to arbitrate, there is no reason for court involvement in the first

place.").

b.  *Count 2 is arbitrable*

Count 2 similarly touches on the Policy. Count 2 in the Complaint is for declaratory

judgment, and requests that this Court issue interpretations of the Arbitration Clause regarding

three issues – "whether the statute of limitations to file suit is subject to New York Law or Texas

law; whether extra contractual damages can be arbitrated; [and] whether New York law or Texas

law is the proper law to decide the issue of extra contractual damages." (Compl. ¶ 80.)

First, "whether the statute of limitations to file suit is subject to New York Law or Texas

law" plainly touches upon the Policy because Plaintiff only argues that Texas law applies by

citing *provisions in the Policy*. (*See* Compl. ¶ 83 ("[Plaintiff] further contends that Texas law

applies to the statute of limitations *pursuant to the Suit Against Us provision in the insurance*

*policy cited above*.") (emphasis added).) This question is for the arbitrator. As the United States

Supreme Court held in *Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002), "whether

prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an

obligation to arbitrate have been met, are for the arbitrators to decide." *Id.* at 85 (emphasis in

original). Thus, it is well settled that, absent the parties' express agreement to the contrary,

timeliness issues relating to an arbitrable dispute are not properly determined by a court. *See*

*also Martens v. Thomann*, 273 F.3d 159, 179 n.14 (2d Cir. 2001) ("if the claims are subject to a

15

valid and enforceable arbitration agreement, the arbitrator, not the court, should be deciding the statute of limitations issue").

Second, Plaintiff's irrelevant theoretical question "whether extra contractual damages can be arbitrated" touches on the Policy because the only six claims that Plaintiff brings all directly and explicitly involve construction of the Policy and the Parties' rights and obligations under it, and thus, as discussed above, must be referred to the arbitration panel convened by Plaintiff.[9] Or, put differently, Plaintiff's damages claim *necessarily* touches upon the Policy and, thus, the dispute is within the scope of the Arbitration Clause.[10]  Plaintiff cannot circumvent arbitration by recasting its contract claims as an ambiguous and abstract request for declaratory judgment regarding damages for those *same* contract claims that arise under the Policy.  *See B.D. Cooke & Partners Ltd. v. Certain Underwriters at Lloyd's, London*, 606 F. Supp. 2d 420, 424 (S.D.N.Y. 2009) (dispute covered by arbitration clause where absent the contract containing the arbitration clause "plaintiff would not have a claim for damages, and there would be no case or controversy upon which plaintiff could request a declaratory judgment").  Indeed, this Circuit has consistently held that the legal label Plaintiff chooses is irrelevant:  "*If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements*, then those claims must be arbitrated, whatever the legal labels attached to them.'"  *Great Lengths Universal Hair*

---

[9] Indeed, all Plaintiff's claims are already before the arbitration panel by virtue of the Arbitration Demand that Plaintiff served prior to commencing this Action.  Moreover, the absence of a dispute before this Court is further illustrated by the fact that the Complaint refuses to posit an answer to this second question regarding extra-contractual damages, merely "pray[ing] that this Court enter a judgment determining *whether* extra-contractual damages can be arbitrated."  (Compl. ¶ 86.)

[10] This is further supported by the fact that the Policy provides that "[t]he Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature."  *See Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 306 F. Supp. 2d 346, 358–59 n.76 (S.D.N.Y. 2004) (finding that arbitrator had authority to decide whether Plaintiff's claim that he was entitled to exemplary or punitive damages where agreement provided that arbitrators "will not have the power to award exemplary damages or punitive damages"); *see also Town of Amherst v. Custom Lighting Servs., LLC*, No. 07-CV-261S, 2007 WL 4264608, at *12 (W.D.N.Y. Nov. 30, 2007) ("Just as the applicability of a condition precedent is not a 'question of arbitrability' for the courts, so too a question as to the availability of punitive damages.").

*Extensions S.r.L. v. Gold*, No. 16-CV-193(GBD) (GWG) 2017 WL 1731184, at *6 (S.D.N.Y.

Mar. 29, 2017) (quoting *Collins*, 58 F.3d at 20-21 (citing *Genesco, Inc. v. T. Kakiuchi & Co.*,

815 F.2d 840, 846 (2d Cir. 1987)) (emphasis added in original).

Third, Plaintiff's improperly posed question — "whether New York law or Texas law is

the proper law to decide the issue of extra contractual damages" — merely combines the choice

of law and so-called "extra contractual damages" issues from the first two questions, and for the

reasons stated above must be arbitrated.  The Policy contains a New York choice of law clause

and a damages exclusion clause, and thus this issue plainly touches upon the Policy.  (ECF No.

3-2 at 7.)  Moreover, this is a nonsensical question because choice of law is determined with

reference to causes of actions, whereas "damages" is simply a remedy.  *See, e.g.*, *Rocanova v.

Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 616 (1994) ("A demand or request

for punitive damages is parasitic and possesses no viability absent its attachment to a substantive

cause of action.").  When the U.S. District Court for the Southern District of Florida recently

ruled on the exact Arbitration Clause at issue here, it held choice of law is for the arbitrator, not

the court, to decide.  *See Ytech 180 Units Miami Beach Investments LLC*, --- F.Supp.3d ---- 2019

WL 580539, at *8 *n.5 (holding that the Arbitration Clause "give[s] an arbitrator exclusive

authority to resolve *any* dispute relating to the Policy," including that "[t]he determination of

whether New York or Florida law applies is left for the arbitrator to decide") (emphasis in

original).  This Court should do the same.  As described above, Plaintiff's label of declaratory

judgment is irrelevant; to the extent there is a dispute, it is arbitrable because its underlying

factual allegations touch on issues encompassed by the Policy.

Finally, Count 2 seeks what is, in effect, an impermissible advisory opinion, which this

Court should not provide because all of these issues are properly left to the arbitrators.  It is

17

fundamental that federal courts may not issue advisory opinions.  *See In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993) ("The duty of an Article III court is to decide live controversies, 'not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'") (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  Here, there is no actual dispute between the Parties before this Court because Plaintiff has already committed the Parties' dispute to arbitration, both by agreeing to be bound by the broad Arbitration Clause and by serving the Arbitration Demand that refers the Parties' dispute to be adjudicated by the arbitrators.  This Court simply cannot issue a declaratory judgment on issues that have already been submitted to the Arbitration.  *See Aeronaves de Mexico, S.A. v. Triangle Aviation Servs., Inc.*, 389 F. Supp. 1388, 1391 (S.D.N.Y. 1974), *aff'd*, 515 F.2d 504 (2d Cir. 1975) ("Where the issues in an action for a declaratory judgment parallel and duplicate the issues appropriately before the arbitrators, the Court may dismiss the action or deny all relief, or declare and enforce defendant's rights to arbitrate.").

Accordingly, the Court should compel arbitration as to Plaintiff's declaratory judgment claim.

### c.    Counts 3, 4, and 8 are arbitrable

Counts 3, 4, and 8 plainly touch upon the Policy because they are claims for *breach of the Policy*.  Specifically, Count 3 is a breach of contract claim alleging that "Defendants, by and through its agents and adjusters have breached the terms of the Policy by failing to pay all amounts due" (Compl. ¶ 89); Count 4 is also a breach of contract claim alleging that "Defendants have breached the subject insurance policy" (Compl. ¶ 121); and Count 8 alleges "breach of the common law duty of good faith and fair dealing owed to [Plaintiff] pursuant to the insurance contract" (Compl. ¶ 148).  These breach of contract claims are clearly within the scope of the Arbitration Clause.  *See, e.g.*, *China Media Express Holdings, Inc. by Barth*, 182 F. Supp. 3d at

51 (where "[plaintiff]'s claims . . . are expressly premised on a breach of the insurance policies,

which define the coverage obligations of the insurers and the contractual duties of the insured . . .

[t]he claims go to the heart of the contract's terms and are therefore within the purview of the

arbitration clauses in those policies").

>            d.     *Counts 5, 6, and 7 are arbitrable*

Counts 5, 6, and 7 also touch upon the Policy because they allege violations of Texas law

in connection with Defendants' alleged representations *about the Policy*, receipt of payments

*pursuant to the Policy*, and failure to pay amounts Plaintiff claims it is owed *under the Policy*.[11]

Counts 5, 6, and 7 are within the scope of the Arbitration Clause:  not only do they "touch

on" the Policy, *on their face* these allegations expressly implicate issues of contract construction

and the Parties' rights and obligations under the Policy.  The fact that Plaintiff labels them as

statutory violations is irrelevant; they are arbitrable because their underlying factual allegations

touch on issues encompassed by the arbitration agreement.  *See Carr*, 2015 WL 9598797, at *3

(compelling arbitration and staying action where plaintiff asserted statutory claim, and holding

that "[p]laintiff's argument that her claim is unrelated to the substance of the [agreement] is

beside the point — even claims that merely 'implicate' parties' rights and obligations under an

agreement are subject to arbitration") (citation omitted); *Interstate Brands Corp. v. Bakery*

*Drivers & Bakery Goods Vending Machs., Local Union No. 550*, No. 96 CV 4454 (SJ), 1998 WL

---

[11] Specifically, Count 5 alleges Defendants violated Texas Insurance Law by allegedly "refusing to pay a claim," "misrepresent[ing] the insurance policy" and "unfair . . . settlement of [Plaintiff's] claims," and seeks to recover "the loss of the benefits that should have been paid pursuant to the policy." (Compl. ¶¶ 127, 128, 129, 131.)  Count 6 claims Defendants violated Texas Insurance Law because the Policy was an "inferior insurance product"; Defendants allegedly represented "that the [Policy] confers or involves rights, remedies, or obligations which it does not have"; and "[b]y accepting insurance premiums" under the Policy – for this, Plaintiff similarly seeks to recover "the loss of the benefits that should have been paid pursuant to the [P]olicy." (Compl. ¶¶ 134-139.)  Count 7 claims Defendants violated Texas Insurance Law "[b]y accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing" under the Policy, and seeks to recover "the amount of its claims" under the Policy plus interest. (Compl. ¶¶ 142-145.)  Tellingly, Plaintiff also asserts these Texas Insurance Law claims in its Arbitration Demand (ECF No. 1-3), and in the Complaint attempts to plead them in the alternative in the event they are not arbitrated. (Compl. ¶¶ 87, 112, 124.)

19974, at *5 (E.D.N.Y. Jan. 20, 1998), *aff'd*, 167 F.3d 764 (2d Cir. 1999) (ordering arbitration of

statutory claims under the Labor Management Relations Act because "[t]he fact that Plaintiff's

claim is a statutory claim does not lead this Court to a different result"); *see also Collins &*

*Aikman Prods. Co.*, 58 F.3d at 23 ("[t]he mere fact that this is a tort claim, rather than one for

breach of the Contracts, does not make the claim any less arbitrable").

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court stay this

action and compel Plaintiff to arbitrate the dispute pursuant to Plaintiff's Arbitration Demand

and grant such other and further relief as it deems just and proper.

Dated: New York, New York
      March 22, 2019

                                     SIDLEY AUSTIN LLP

                                     By: */s/ Andrew W. Stern*
                                       Andrew W. Stern (astern@sidley.com)
                                       Nicholas P. Crowell (ncrowell@sidley.com)
                                       Benjamin F. Burry (bburry@sidley.com)
                                       787 Seventh Avenue
                                       New York, New York 10019
                                       Telephone: (212) 839-5300
                                       Facsimile:  (212) 839-5599

                                     *Attorneys for Defendant Lexington Insurance*
                                     *Company*

                                     ZELLE LLP

                                     By:
                                     Brett A. Wallingford
                                     (bwallingford@zelle.com) (admitted
                                     *pro hac vice*)
                                     901 Main Street, Suite 4000
                                     Dallas, Texas 75202
                                     Telephone: (214) 742-3000
                                     Facsimile:  (214) 760-8994

*Attorneys for Defendants AmRisc LLC, Certain Underwriters at Lloyd's, London subscribing to Certificate Nos. B123017AMR1042, B123017AMR1139, and B123017AMR252 forming part of Policy No. AMR-37265-03; Indian Harbor Insurance Co.; QBE Specialty Insurance Co.; Steadfast Insurance Company; General Security Indemnity Co. of Arizona; United Specialty Insurance Co.; Lexington Insurance Co.; Princeton Excess & Surplus Lines Insurance Co.; International Insurance Co. of Hannover, SE; Axis Surplus Insurance Co.; RSUI Indemnity Co.; First Specialty Insurance Corporation; Arch Specialty Insurance Company; Evanston Insurance Company; Rockhill Insurance Company; and Scottsdale Insurance Company*