**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ X
CORPUS CHRISTI INDEPENDENT SCHOOL    :
DISTRICT,              :   Case No. 1:19-cv-00301 (ARR)
                 :
        Plaintiff,       :
                 :
      v.           :
                 :
AMRISC, LLC; CERTAIN UNDERWRITERS AT   :
LLOYDS, LONDON SUBSCRIBING TO     :
CERTIFICATE NOS. B123017AMR1042,     :
B123017AMR1139, and B123017AMR252 FORMING :
PART OF POLICY NO. AMR-37265-03; INDIAN   :
HARBOR INSURANCE COMPANY; QBE     :
SPECIALTY INSURANCE COMPANY;      :
STEADFAST INSURANCE COMPANY; GENERAL   :
SECURITY INDEMNITY COMPANY OF      :
ARIZONA; UNITED SPECIALTY INSURANCE    :
COMPANY; LEXINGTON INSURANCE      :
COMPANY; PRINCETON EXCESS AND SURPLUS   :
LINES INSURANCE COMPANY;        :
INTERNATIONAL INSURANCE COMPANY OF    :
HANNOVER SE; AXIS SURPLUS INSURANCE    :
COMPANY; RSUI INDEMNITY COMPANY; FIRST   :
SPECIALTY INSURANCE CORPORATION; ARCH   :
SPECIALTY INSURANCE COMPANY;      :
EVANSTON INSURANCE COMPANY; ROCKHILL   :
INSURANCE COMPANY; SCOTTSDALE      :
INSURANCE COMPANY,         :
                 :
        Defendants.      :
                 :
------------------------------------------------------------------ X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**<u>MOTION TO STAY THIS ACTION AND COMPEL ARBITRATION</u>**

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ..........................................................................................................................3

I.     THE FAA REQUIRES THAT THIS COURT STAY THIS ACTION AND COMPEL
       ARBITRATION OF THE PARTIES' DISPUTE..................................................................3

II.    PLAINTIFF'S PURPORTED DEFENSES MUST BE RESOLVED BY THE
       ARBITRATORS AND, IN ANY EVENT, ARE WITHOUT MERIT ...........................5

       A.    There Is No Ambiguity In The Damages Limitation Clause. ...................8

       B.    The McCarran-Ferguson Act Does Not Apply. .........................................9

             1.    For McCarran-Ferguson to Apply, Plaintiff Bears the Burden
                   to Show That the FAA Will "Invalidate, Impair Or Supersede"
                   Texas Insurance Law. ........................................................................10

             2.    The FAA Does Not Invalidate, Impair, or Supersede Texas Insurance
                   Law. .....................................................................................................11

       C.    Plaintiff Provides No Basis For This Court To Conclude
             That The Damages Limitations Clause Is Unconscionable. ...................14

       CONCLUSION..........................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  6 P.3d 669 (Cal. 2000) ...............................................................................15

*Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*,
  424 F.3d 278 (2d Cir. 2005), *abrogated on other grounds by Granite Rock Co.
  v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ........................................3

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981) .....................................................................................15

*Bethune v. Lendingclub Corp.*,
  No. 16-2578, 2017 WL 462287 (S.D.N.Y. Jan. 30, 2017) ..........................3

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006)..................................................................................3, 11

*Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*,
  208 F. Supp. 3d 494 (E.D.N.Y. 2016) .......................................................11

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) .....................................................................................15

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*,
  95 A.D.2d 5 (4th Dep't 1983) .....................................................................15

*In re Certain Underwriters at Lloyd's*,
  18 S.W.3d 867 (Tex. App. 2000) ................................................................13

*Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.*,
  No. 18 CIV. 10382 (CM), 2019 WL 760802 (S.D.N.Y. Feb. 6, 2019) ............1, 2, 11

*China Media Express Holdings, Inc. v. Nexus Executive Risks, Ltd.*,
  182 F. Supp. 3d 42 (S.D.N.Y. 2015).............................................................4

*Christian v. Christian*,
  42 N.Y.2d 63 (1977) ....................................................................................14

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 2005)..............................................................................5

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002) .....................................................................................15

*Graham Oil Co. v. ARCO Prod. Co.*,
    43 F.3d 1244 (9th Cir. 1994) ...........................................................................15

*Hamilton Life Ins. Co. of N.Y. v. Republic Nat. Life Ins. Co.*,
    408 F.2d 606 (2d Cir. 1969)..............................................................................10

*Harrington v. Atlantic Sounding Co., Inc.*,
    602 F.3d 113 (2d Cir. 2015)................................................................................4

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*,
    230 F.3d 549 (2d Cir. 2000)..............................................................................11

*Humana v. Forsyth*,
    525 U.S. 299 (1999)..........................................................................................10

*Kai Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ..................................................................6

*Kong v. Allied Prof'l Ins. Co.*,
    750 F.3d 1295 (11th Cir. 2014) ........................................................................13

*Kornit v. Bd. of Ed., Plainview-Old Bethpage Cent. Sch. Dist.*,
    54 A.D.2d 959 (2d Dep't 1976) .........................................................................9

*Kuehn v. Citibank, N.A.*,
    No. 12 CIV. 3287 DLC, 2012 WL 6057941 (S.D.N.Y. Dec. 6, 2012) ...............6

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*,
    424 F.3d 195 (2d Cir. 2005)..............................................................................11

*Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010)................................................................................8

*Long v. Amway Corp.*,
    306 F. Supp. 3d 601 (S.D.N.Y. 2018).................................................................6

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)............................................................................................15

*McCoy v. Dave & Busters, Inc.*,
    No. 15-CV-0465 (JFB) (AYS), 2018 WL 550637 (E.D.N.Y. Jan. 24, 2018) ......6, 7

*McKnight v. Chicago Title Ins. Co.*,
    358 F.3d 854 (11th Cir. 2004) ..........................................................................14

*Miller v. Nat'l Fid. Life Ins. Co.*,
    588 F.2d 185 (5th Cir. 1979) ............................................................................13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..................................................................................................15

*Morgan Stanley Grp. Inc. v. New England Ins. Co.*,
    225 F.3d 270 (2d Cir. 2000)......................................................................................8

*Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co.*,
    969 F.2d 931 (10th Cir. 1992) .................................................................................14

*Narayan v. The Ritz-Carlton Dev. Co., Inc.*,
    140 Haw. 343 (2017) ...............................................................................................15

*Nitro-Lift Techs., LLC v. Howard*,
    568 U.S. 17 (2012)....................................................................................................3

*Preston v. Ferrer*,
    552 U.S. 346 (2008)..................................................................................................3

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)..............................................................................................3, 11

*Reda v. Eastman Kodak Co.*,
    233 A.D.2d 914 (4th Dep't 1996) ...........................................................................11

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)........................................................................................3, 6, 7, 11

*RJE Corp. v. Northville Indus. Corp.*,
    329 F.3d 310 (2d Cir. 2003)......................................................................................8

*Shaw Group Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003)......................................................................................3

*Sommer v. Fed. Signal Corp.*,
    79 N.Y.2d 540 (1992) ..............................................................................................15

*Southwest LTC-Management Servs., LLC. v. Lexington Ins. Co.*,
    No. 1:18-cv-00491, 2019 WL 1715832 (E.D. Tex. Mar. 29, 2019) .......................11

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,
    263 F.3d 26 (2d Cir. 2001)......................................................................................13

*St. Paul Fire & Marine Ins. Co. v. Courtney Enterprises, Inc.*,
    270 F.3d 621 (8th Cir. 2001)...................................................................................13

*Standard Sec. Life Ins. Co. of N.Y. v. West*,
    267 F.3d 821 (8th Cir. 2001) ..................................................................................14

*Stirlen v. Supercuts, Inc.*,
  51 Cal. App. 4th 1519 (Cal. Ct. App. 1997) ...................................................15

*Stony Brook Marine Transp. Corp. v. Wilton*,
  No. 94-5880, 1996 WL 913180 (E.D.N.Y. May 1, 1996) .......................................3

*The Shipman Agency, Inc. v. TheBlaze Inc.*,
  315 F. Supp. 3d 967 (S.D. Tex. 2018) ...........................................................15

*Travelport Glob. Distribution Sys. B.V. v. Bellview Airlines Ltd.*,
  No. 12 CIV. 3483 (DLC), 2012 WL 3925856 (S.D.N.Y. Sept. 10, 2012) ...............9

*Two Locks, Inc. v. Kellogg Sales Co.*,
  68 F. Supp. 3d 317 (E.D.N.Y. 2014) ............................................................11

*Venture Cotton Co-op. v. Freeman*,
  435 S.W.3d 222 (Tex. 2014) ......................................................................15

*Washington v. William Morris Endeavor Entm't*,
  No. 10 Civ. 9647 (PKC)(JCF), 2011 WL 3251504 (S.D.N.Y. July 20, 2011) .............6, 7

*Wilson Trading Corp. v. David Ferguson, Ltd.*,
  23 N.Y.2d 398 (1968) ...............................................................................14

*Xuchang Rihetai Human Hair Goods Co., Ltd. v. Hanyu Int'l USA Inc.*,
  00–CV–5585, 2001 WL 883646 (S.D.N.Y. Aug. 7, 2001) ...................................14

*Ytech 180 Units Miami Beach Investments LLC v. Certain Underwriters at
  Lloyd's, London*,
  359 F. Supp. 3d 1253 (S.D. Fla. 2019) ......................................................1, 6, 7

**Statutes**

McCarran-Ferguson Act, 15 U.S.C. § 1012(b) .................................................9, 10

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ...............................................1, 11

Texas Business & Commercial Code, Chapter 17 ...............................................12

Texas Insurance Code, Chapter 541 ..............................................................12

Texas Insurance Code, Chapter 542 ..............................................................12

Defendants respectfully submit this reply memorandum of law in further support of their

motion, pursuant to Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et

seq.*, to compel arbitration.[1]

## PRELIMINARY STATEMENT

Plaintiff's Opposition is stunning in its failure to address any of the arguments raised in

Defendants' Opening Brief, or make arguments that bear on the very narrow questions before

this Court:  whether (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at

issue fall within the scope of that agreement.  Plaintiff does not challenge either proposition and,

accordingly, Defendants' motion must be granted.

Plaintiff's concession of the merits of Defendants' motion is so complete that it does not

even address – let alone try to distinguish – the two recent decisions that have considered the

precise text of the Arbitration Clause at issue here, and held that it requires arbitration of all

disputes.  As one federal court explained, "the only reasonable interpretation [of the Arbitration

Clause] is that the Parties . . . agreed to give an arbitrator exclusive authority to resolve *any*

dispute relating to the Policy."  *Ytech 180 Units Miami Beach Investments LLC v. Certain

Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1266 (S.D. Fla. 2019) (emphasis added)

(granting motion to compel arbitration of all claims, including as to choice of law).[2]  Similarly,

in *Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.*, No. 18 CIV.

10382 (CM), 2019 WL 760802, at *5 (S.D.N.Y. Feb. 6, 2019), Judge McMahon rejected an

insured's request to litigate its dispute with its insurer over denial of coverage, found that the

Arbitration Clause "is compulsory," and conclusively held:  "Under the plain terms of the Policy,

any such dispute must be arbitrated. Period. End of story."  *Id.*; *see id.* at *6 (admonishing that

---

[1] Capitalized terms have the meaning in Defendants' opening brief ("Opening Brief" or "Br."), *see* ECF No. 26.
[2] *See Ytech 180 Units Miami Beach Investments*, 359 F. Supp. 3d at 1258 (quoting identical Arbitration Clause).

the insured's effort to avoid arbitration "wastes this busy Court's time with [a] frivolous application").[3]

Instead of engaging on the issues before this Court, Plaintiff raises three irrelevant and unsupported arguments, all of which focus on the damages limitation clause in the Policy. That clause states "[t]he Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature" (the "Damages Limitation Clause"). (ECF No. 3-5 at 14.) Plaintiff contends, without any support, that: (1) the Damages Limitation Clause is ambiguous and should be construed to resolve ambiguity *against* arbitration; (2) the FAA should not apply to, and therefore mandate the enforcement of, the Damages Limitation Clause because it "prohibits Plaintiff from pursuing its rights and remedies under Texas Statutory and Common Law" in violation of the McCarran-Ferguson Act; and (3) the Damages Limitation Clause is substantively unconscionable and against (Texas) public policy because it is a limitation on liability or a damages cap, and restricts statutory remedies.

Not only are all of these arguments meritless, but they are also outside the scope of the narrow inquiries permitted by the FAA. In raising them, Plaintiff ignores the threshold question of whether an arbitrator or a court should assess the enforceability of the Arbitration Clause. Plaintiff does this strategically and intentionally because the FAA makes clear that the arbitrator, and not a court, should resolve these issues, and because Texas insurance law (even if applicable) does not remotely suggest a different approach on the threshold issue of *who* should decide the arbitrability of Plaintiff's challenges to the Damages Limitation Clause.

None of Plaintiff's arguments is directed to the making or performance of the delegation clause that commits such issues to the arbitrator. That clause provides that "[a]ll matters in

---

[3] *See Vintage Grand Condo. Ass'n, Inc.*, 2019 WL 760802, at *1 (quoting identical Arbitration Clause).

difference between [the Parties] in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out."  (ECF. No. 1-3 at 3-4.)  Therefore, under well-established federal law, Plaintiff's challenges must be decided by the Arbitration Tribunal.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010); *see Nitro-Lift Techs., LLC v. Howard*, 568 U.S. 17, 21–22 (2012); *Preston v. Ferrer*, 552 U.S. 346, 354 (2008);  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443–44 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967).  Accordingly, for the reasons set forth in Defendants' Opening Brief, and below, this Court must grant Defendants' motion.

## ARGUMENT

I.   **THE FAA REQUIRES THAT THIS COURT STAY THIS ACTION AND COMPEL ARBITRATION OF THE PARTIES' DISPUTE**

As explained in Defendants' Opening Brief, arbitration must be compelled where:  (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement.  *See Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005), *abrogated on other grounds by Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010).  Under the FAA, "the role of courts is 'limited to determining [these] two issues,'" and if the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms.  *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003).

An arbitration agreement governed by the FAA, like the Arbitration Clause here, is *presumed* to be valid and enforceable.  *See Bethune v. Lendingclub Corp.*, No. 16-2578, 2017 WL 462287, at *2 (S.D.N.Y. Jan. 30, 2017); *Stony Brook Marine Transp. Corp. v. Wilton*, No. 94-5880, 1996 WL 913180, at *8 (E.D.N.Y. May 1, 1996) ("Because the arbitration clause is

referenced in a written contract, it should be considered valid and enforceable.").  Moreover, it is well settled that the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue.  *See, e.g.*, *Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2015) ("A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement is inapplicable or invalid."); *China Media Express Holdings, Inc. v. Nexus Executive Risks, Ltd*., 182 F. Supp. 3d 42, 50 (S.D.N.Y. 2015) (noting that the opponent of arbitration bears the burden of showing that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute).

In its Opposition, Plaintiff does not dispute that:  (1) the Policy contains a valid, enforceable agreement to arbitrate; and (2) the eight claims in the Complaint fall within the scope of that agreement.  (*See* Br. 9-13.)  As to the first inquiry, Plaintiff concedes the validity of the Arbitration Clause in the Policy.  Indeed, in its Complaint, Plaintiff "prays that this Court enter a judgment compelling arbitration in accordance with the arbitration clause in the subject insurance policy," requests that this Court should "stay the litigation," and instructs that pursuant to the FAA "a judicial order compelling arbitration is ***mandatory***."  (Compl. ¶¶ 72, 77 (emphasis in original).)  Moreover, Plaintiff expressly states that it "does not dispute that pursuant to the FAA and both Texas and New York law a contract of insurance is subject to arbitration under a properly drafted and valid arbitration agreement" and moves "to compel arbitration on the issues regarding the dispute directly related to the contract of insurance per the Arbitration Clause." (Opp. 6.)

As to the second inquiry, as explained in the Opening Brief, the Parties' dispute concerning the quantum of payments owed on Plaintiff's claims obviously falls within the exceedingly broad scope of the Arbitration Clause.  Again, Plaintiff does not dispute that the

Policy's Arbitration Clause committing to arbitration "all" matters in difference is a "broad" arbitration clause.  As such, the FAA imposes a "presumption of arbitrability" that Plaintiff can only rebut by demonstrating that the Parties' dispute "present[s] no question involving construction of the [Policy], and no questions in respect of the [P]arties' rights and obligations under it."  *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 2005).  Plaintiff does not even attempt to rebut the presumption.  Not only has Plaintiff already submitted all claims in the Complaint to arbitration in its Arbitration Demand (ECF No. 1-3), and expressly conceded in its Complaint that the dispute is arbitrable (Compl. ¶ 75), in its Opposition it does not in any way disagree that all of Plaintiff's claims require an interpretation of the Policy – and, therefore, are arbitrable.

Accordingly, this Court does not need to proceed any further because the record compels the conclusion that the entirety of the Parties' dispute must be heard by the Arbitration Tribunal that Plaintiff has already convened.

## II.   PLAINTIFF'S PURPORTED DEFENSES MUST BE RESOLVED BY THE ARBITRATORS AND, IN ANY EVENT, ARE WITHOUT MERIT

In a transparent attempt to avoid the damages limitation to which it agreed and to otherwise frustrate the arbitration process, Plaintiff asks this Court to re-write the Parties' agreement on the grounds that the Damages Limitation Clause is ambiguous, reverse-preempted by the McCarran-Ferguson Act, and unconscionable.  Plaintiff's arguments are wrong, and the entirety of this matter should be referred to arbitration without any further delay.

As a threshold matter, the Parties clearly and unmistakably delegated the authority to adjudicate Plaintiff's arguments to the Arbitration Tribunal.  Typically, certain gateway matters,

such as the validity and enforceability[4] of the arbitration agreement, are resolved in the first instance by a court. *Ytech 180 Units Miami Beach Investments LLC*, 359 F. Supp. 3d at 1263. However, these gateway matters are not decided by a court if the parties have clearly and unmistakably delegated to an arbitrator the authority to resolve issues of arbitrability. *McCoy v. Dave & Busters, Inc.*, No. 15-CV-0465 (JFB) (AYS), 2018 WL 550637, at *4 (E.D.N.Y. Jan. 24, 2018). Upon a determination that the parties have done so – as in the instant matter – a court may intervene in lieu of the arbitrators only if there is a challenge specifically directed to enforceability of the delegation clause itself. *Rent-A-Center*, 561 U.S. at 71; *Long v. Amway Corp.*, 306 F. Supp. 3d 601, 608–09 (S.D.N.Y. 2018) (finding that a delegation clause will be enforced "absent a specific challenge to the delegation clause by the party resisting arbitration"); *Kuehn v. Citibank, N.A.*, No. 12 CIV 3287 DLC, 2012 WL 6057941, at *3 (S.D.N.Y. Dec. 6, 2012) ("in light of a delegation agreement, a party's challenge to the arbitration agreement on unconscionability grounds is a dispute that must be resolved by arbitration unless the party opposing arbitration demonstrates that the delegation agreement itself is unenforceable").

Here, the Parties' clear and unmistakable delegation of the authority to adjudicate Plaintiff's arguments is manifest. Indeed, the delegation clause of the arbitration agreement states that:

> [a]ll matters in difference between the Insured and Companies . . . in relation to this insurance, ***including its formation and validity*, shall be referred to an Arbitration Tribunal.**

(ECF. No. 1-3 at 3-4 (emphasis added).) Courts in this Circuit have consistently found similar language to constitute clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability. *See, e.g., Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 52-53 (E.D.N.Y.

---

[4] Notably, this includes a claim of unconscionability. *See, e.g., Washington v. William Morris Endeavor Entm't*, No. 10 Civ. 9647 (PKC)(JCF), 2011 WL 3251504, at *4 (S.D.N.Y. July 20, 2011).

2017) (provision stating that the arbitrator would decide disputes "arising out of or relating to interpretation or application of th[e] Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision" was clear and unmistakable delegation); *Washington*, , 2011 WL 3251504, at \*6 (provision providing that the arbitrator "shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of th[e] Agreement, including but not limited to any claim that all o[r] any part of th[e] Agreement is void or voidable" clearly and unmistakably authorized the arbitrator alone "to decide issues of arbitrability, including whether the [Agreement] and any part thereof [wa]s enforceable").  And, indeed, at least one federal court has already expressly held that the ***exact*** arbitration clause at issue in this case clearly and unmistakably commits questions of arbitrability to the arbitrator.  *See Ytech 180 Units Miami Beach Investments LLC*, 359 F. Supp. 3d at 1266 (conducting analysis and concluding, "the Arbitration Clause unambiguously commits to the arbitrator the power to determine issues of arbitrability, including validity and enforceability").  Moreover, none of Plaintiff's arguments even refer to the delegation provision, let alone challenge its validity or enforceability.  *McCoy*, 2018 WL 550637, at \*8 ("The Court concludes that plaintiff's enforceability challenges do not go to the validity of the delegation clauses and, therefore, that it must defer such challenges to the arbitrator. Like in *Rent-A-Center*, plaintiff fails to even mention the delegation clauses in either of his opposition briefs.")  Accordingly, Plaintiff's contention that the Damages Limitation Clause is ambiguous and unconscionable must be referred to arbitration for resolution.

In any event, even if this Court is inclined to resolve Plaintiff's arguments concerning the Damages Limitation Clause, none of Plaintiff's arguments have merit, as discussed more fully below.

A.     **There Is No Ambiguity In The Damages Limitation Clause.**

Plaintiff's contention that the Damages Limitation Clause is ambiguous lacks merit.

Whether a contract is ambiguous is a threshold question of law. *Morgan Stanley Grp. Inc. v.*

*New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000). Contract terms "are not ambiguous if

they have a definite and precise meaning and are not reasonably susceptible to differing

interpretations." *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003)

(citation omitted). "Language whose meaning is otherwise plain does not become ambiguous

merely because the parties urge different interpretations in the litigation." *Law Debenture Tr.*

*Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (citations omitted).

It is therefore well settled that a contract is ambiguous only "where the terms of the contract

could suggest more than one meaning when viewed objectively by a reasonably intelligent

person who has examined the context of the entire integrated agreement and who is cognizant of

the customs, practices, usages and terminology as generally understood in the particular trade or

business." *Id.* at 466 (citation omitted).

Here, Plaintiff has not proffered anything even approaching an objectively reasonable

alternative interpretation of the Damages Limitation Clause based on the language contained

therein. The delegation clause in the Policy is clear that "[a]ll" disputes between the Parties

"shall be referred to an Arbitration Tribunal," and the Damages Limitation Clause is clear that

the Arbitration Tribunal resolving all such disputes "may not award exemplary, punitive,

multiple, consequential, or other damages of a similar nature." (ECF No. 3-5 at 14.) Plaintiff's

*ipse dixit* that the provision is ambiguous is simply not sufficient to justify resort to extrinsic

evidence to discern the Parties' intent or to apply the doctrine of *contra preferendum*. The

Policy's use of the phrase "may not" is crystal clear and does nothing to call into question that

the delegation provision provides for arbitration as the exclusive method for resolution of

8

disputes between the Parties.  Plaintiff's protestations to the contrary should be disregarded.  *See*

*Travelport Glob. Distribution Sys. B.V. v. Bellview Airlines Ltd.*, No. 12 CIV. 3483 (DLC), 2012

WL 3925856, at *4 (S.D.N.Y. Sept. 10, 2012) ("The overwhelming balance of authority in this

circuit and elsewhere indicates that, absent some separate suggestion that an Arbitration

Provision is intended to trigger permissive arbitration, provisions with the word 'may' trigger

mandatory arbitration."); *Kornit v. Bd. of Ed., Plainview-Old Bethpage Cent. Sch. Dist.*, 54

A.D.2d 959, 959 (2d Dep't 1976) (holding that arbitration procedure set forth in agreement

"provided exclusive methods for settlement of grievances," and ordering dismissal of plaintiff's

complaint because "[t]he use of the word 'may' in the article entitled 'Grievance Procedure'

should not be construed to mean that arbitration was an optional method").

> ### B.      The McCarran-Ferguson Act Does Not Apply.

Plaintiff argues that the McCarran-Ferguson Act reverse-preempts the FAA and prevents

enforcement of the arbitration agreement, because allowing arbitrators, rather than a court, to

decide whether Plaintiff's claims for "extra-contractual damages" and violation of Texas

insurance law to be sustained would "circumvent Texas statutory insurance law."  (Opp. 9.)  This

Court should reject this argument because the McCarran-Ferguson Act has no application unless

federal law – here, the FAA – "invalidates, impairs or supersedes" a "law enacted by" Texas "for

the purpose of regulating the business of insurance."  15 U.S.C. § 1012(b).  Nothing in Texas

insurance law prohibits arbitrators from resolving an insured's breach of contract and statutory

claims.  Accordingly, the FAA applies and this Court must compel arbitration pursuant to

Sections 3 and 4 of the FAA.

1.    For McCarran-Ferguson to Apply, Plaintiff Bears the Burden
to Show That the FAA Will "Invalidate, Impair Or Supersede"
Texas Insurance Law.

Section 2 of the McCarran-Ferguson Act states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance."  15 U.S.C. § 1012(b).  Pursuant to this provision, McCarran-Ferguson "reverse-preempts" or "precludes application of a federal statute [1] in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' [2] if the federal measure does not 'specifically relat[e] to the business of insurance,' and [3] would 'invalidate, impair, or supersede' the State's law." *Humana v. Forsyth*, 525 U.S. 299, 307 (1999).  In applying McCarran-Ferguson, (i) the term "invalidate" means "to render ineffective, generally without providing a replacement rule or law," *id.*, (ii) the term "supersede" means "to displace (and thus render ineffective) while providing a substitute rule," *id.*, and (iii) federal law does not "impair" state insurance law when it "does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime," *id.* at 310.  Plaintiff, as the party resisting arbitration, bears the burden to show that McCarran-Ferguson "reverse-preempts" the FAA.  *See Hamilton Life Ins. Co. of N.Y. v. Republic Nat. Life Ins. Co.*, 408 F.2d 606, 611 (2d Cir. 1969).  Plaintiff has failed to meet its burden.

2.      The FAA Does Not Invalidate, Impair, or Supersede Texas Insurance Law.

There is no conflict between the FAA and the Texas insurance law.[5]  Section 2 of the

FAA does no more than resolve the procedural question of *who* (a court or an arbitrator) should

decide a particular controversy.  *See* 9 U.S.C. § 2.  The FAA's framework for resolving that

issue—set forth by the U.S. Supreme Court in cases like *Prima Paint*, *Buckeye Check Cashing*

and *Rent-A-Center*—should apply because it does not "invalidate, impair, or supersede" Texas

insurance law.

Plaintiff argues that the FAA "operates to 'invalidate, impair, or supersede' the state law"

simply based on its conclusory assertion that "[t]o allow Defendants to eliminate Texas Statutory

---

[5] Plaintiff's focus on rights and remedies under Texas law is misplaced because the Policy contains a New York choice of law provision.  (*See* ECF No. 3-5 at 14 ("The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.").).  Under well-settled New York choice-of-law principles, this means that New York law applies.  *See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) ("New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction.").  Further, the New York choice-of-law provision precludes Plaintiff from asserting statutory claims under another state's law.  *See Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 504 (E.D.N.Y. 2016) (granting motion to dismiss because "the New York choice-of-law provision contained in the Dealer Agreements prevents Canon's assertion of North Carolina, Nevada, and Florida state consumer protection and unfair trade practices claims").  Accordingly, the Policy is a New York insurance policy in which Plaintiff agreed to be bound by New York law and, as such, if and when the issue is properly submitted to the Arbitrational Tribunal, it should rule that New York law applies and Plaintiff may not assert statutory claims under Texas law.

Similarly, this Court must reject Plaintiff's argument that the Policy's "Service of Suit" provision requires that Texas law applies.  (Opp. 23-24.)  It is a well-settled principle of contractual interpretation that "[e]ffect and meaning must be given to every term of the contract and reasonable effort must be made to harmonize all of its terms."  *Reda v. Eastman Kodak Co.*, 233 A.D.2d 914, 915 (4th Dep't 1996) (citation omitted); *see Two Locks, Inc. v. Kellogg Sales Co.*, 68 F. Supp. 3d 317, 328 (E.D.N.Y. 2014) ("[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible") (quoting *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)).  Here, Plaintiff's attempt to read together the "Service of Suit Clauses, the Applicable Law provision, and the Suit Against Companies Clause" to invent a requirement that Texas law applies (Opp. 23), would render the New York choice of law provision superfluous and needlessly create the disharmony between contract terms that courts must avoid in contract interpretation.  Moreover, two federal courts have already rejected challenges to this *exact* Arbitration Clause that sought to use the Service of Suit provision to avoid arbitration.  *See Vintage Grand Condo. Ass'n, Inc.*, 2019 WL 760802, at *5 ("Vintage's invocation of the 'Service of Suit' endorsement to the policy avails it nothing, since it has been settled law in this Court, for a very long time indeed, that a 'service of suit' endorsement does not read an arbitration clause out of an insurance policy, but merely provides a means for enforcing an arbitration award in a court of law."); *Southwest LTC-Management Servs., LLC. v. Lexington Ins. Co.*, No. 1:18-cv-00491, 2019 WL 1715832, at *6 (E.D. Tex. Mar. 29, 2019) (construing "the service-of-suit provision as complementing the arbitration clause by providing a judicial forum for compelling or enforcing arbitration" and "[t]herefore, there is not only a valid agreement to arbitrate, but the service-of-suit provision does not supersede the arbitration clause").

law under the FAA through an Arbitration Clause, would in effect invalidate the State's

regulation of the business of insurance, which has been specifically reserved to the States

through the McCarran-Ferguson Act." (Opp. 11). Under Plaintiff's unsupported view, the mere

fact that Texas insurance laws exist means that the FAA is reverse-preempted and, as a matter of

federal law, no Texas insured may be held to the arbitration provisions to which they agreed.

Simply stated:  that is not the law.

      The only provision of Texas insurance law that Plaintiff raises is Section 541.001, which

states:

> The purpose of this chapter is to regulate trade practices in the business of insurance
> by: (1) defining or providing for the determination of trade practices in this state
> that are unfair methods of competition or unfair or deceptive acts or practices; and
> (2) prohibiting those trade practices.

(Opp. 11 (citing Tex. Ins. § 541.001).) Section 541.001 does not expressly or implicitly impose

any limitations on—or even ***address***—the enforceability of a valid arbitration provision.  Texas

insurance law reflects no competing procedural framework for resolving the issue of

arbitrability; therefore, the FAA applies because it does not "invalidate, impair, or supersede"

Texas insurance law.  The same is true of the Texas statutory claims that Plaintiff asserts as

Counts 5, 6, and 7 in its Complaint.[6]

---

[6] Count 5 alleges statutory violations of Texas Insurance Code, Chapter 541.  *See* Compl. Count 5; Tex. Ins. §§ 541.051 (Misrepresentation Regarding Policy or Insurer), 541.052 (False Information and Advertising), 541.060 (Unfair Settlement Practices), 541.061 (Misrepresentation of Insurance Policy).  In Count 6, Plaintiff alleges violation of the Texas Deceptive Trade Practices and Consumer Protection, which Plaintiff misrepresents as part of the Texas Insurance Code, *see* Compl. ¶ 139 (citing "Tex. Ins. Code Ann. Section 17.50(b)(1)"), when, in fact, the statute it is a general consumer protection statute within Texas Business and Commercial Code, *see* Tex. Bus. & C. § 17.50 (Relief for Consumers).  In Count 7, Plaintiff alleges a statutory violation based on two particular provisions in Texas Insurance Code, Chapter 542.  *See* Compl. Count 7; Tex. Ins. §§ 542.058 (Delay in Payment of Claim), 542.060 (Liability for Violation of Subchapter).  None of these provisions either expressly or implicitly address arbitrability for violations, other than Texas Insurance Code section 542.058, which expressly *endorses* arbitration as proper to resolve claims against an insurer.  *See* Tex. Ins. § 542.058(b) (providing that the insurer is not liable for delay in payment of a claim "in a case in which it is found *as a result of arbitration* or litigation that a claim received by an insurer is invalid and should not be paid by the insurer") (emphasis added).

Indeed, the Eighth Circuit Court of Appeals has already held precisely so with respect to the FAA and Texas insurance law. *See St. Paul Fire & Marine Ins. Co. v. Courtney Enterprises, Inc.*, 270 F.3d 621, 625 (8th Cir. 2001) (rejecting argument that "the Federal Arbitration Act would be 'inversely preempted' by the McCarran–Ferguson Act" because it is "establish[ed] that Texas courts *do* enforce agreements to arbitrate insurance disputes," and accordingly, the court "ha[s] no authority to address" the merits of the insured's challenge "as the parties have agreed to submit it to arbitration") (emphasis added) (citing *In re Certain Underwriters at Lloyd's*, 18 S.W.3d 867, 871-72 (Tex. App. 2000) (compelling arbitration of insured's claims against insurer, including alleged violations of Texas Insurance Code, pursuant to arbitration provision in insurance agreement because "the [FAA] governs, and Texas courts must enforce the FAA," and explaining that "[a]rbitration of disputes is strongly favored in both federal and state law")).

Other federal appeals courts have similarly held that McCarran-Ferguson does not displace the FAA where, as here, the applicable state insurance statutes do not specifically regulate (or prohibit) arbitration clauses. *See Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1303–04 (11th Cir. 2014) (rejecting argument that McCarran-Ferguson required FAA to yield to Florida insurance law where insured did not "identif[y] a single state insurance statute that would be invalidated, impaired or superseded by the application of the FAA"); *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 33–34 (2d Cir. 2001) (holding that dispute involving insurance contract was subject to arbitration); *Miller v. Nat'l Fid. Life Ins. Co.*, 588 F.2d 185, 187 (5th Cir. 1979) (holding that McCarran-Ferguson was not triggered by application of the FAA where "[a]n examination of the [state's] insurance code reveals that it has no provision concerning arbitration clauses").

For the same reason, this case is markedly different from those where the McCarran-Ferguson Act displaced application of the FAA in jurisdictions because an applicable state insurance law expressly *prohibits* arbitrators from deciding such controversies. *See McKnight v. Chicago Title Ins. Co.*, 358 F.3d 854, 855 (11th Cir. 2004) (finding reverse-preemption of the FAA where "the Georgia Arbitration Code expressly excludes from its coverage arbitration provisions in insurance contracts"); *Standard Sec. Life Ins. Co. of N.Y. v. West*, 267 F.3d 821, 823–24 (8th Cir. 2001) (holding the FAA was reverse-preempted under McCarran-Ferguson where Missouri Arbitration Act provides that an arbitration "provision in a written contract, *except contracts of insurance* . . . is valid, enforceable and irrevocable") (emphasis added); *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931, 932–34 (10th Cir. 1992) (similar for Kansas statute).

### C. Plaintiff Provides No Basis For This Court To Conclude That The Damages Limitations Clause Is Unconscionable.

Plaintiff's assertion that the Damages Limitation Clause is unconscionable also lacks merit. An unconscionable agreement is "one such as no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense." *Christian v. Christian*, 42 N.Y.2d 63, 71 (1977) (citations omitted). "Whether a contract's terms are unconscionable is a matter of law to be determined in light of 'the background of the contract's commercial setting, purpose, and effect.'" *Xuchang Rihetai Human Hair Goods Co., Ltd. v. Hanyu Int'l USA Inc.,* 00–CV–5585, 2001 WL 883646, at *4 (S.D.N.Y. Aug. 7, 2001) (quoting *Wilson Trading Corp. v. David Ferguson, Ltd.,* 23 N.Y.2d 398, 403–04 (1968)). "In cases involving transactions of a commercial nature, courts have rarely found unconscionability, and it has been held that when

14

businessmen contract in a commercial setting, a presumption of conscionability arises." *Cayuga*

*Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5, 20 (4th Dep't 1983) (citations omitted).

Here, Plaintiff has failed to allege any facts, let alone adduce any evidence, supporting its

conclusory assertion that the Damages Limitation Clause is unconscionable.  Instead, Plaintiff

cites to a series of cases where a court deemed a provision limiting damages unconscionable

because it interfered with a party's right to recover punitive or exemplary damages provided for

by some statute or rule wholly inapplicable to these proceedings.[7]  However, none of the statutes

upon which Plaintiff relies in *this* case require an award of punitive or exemplary damages.  That

Plaintiff is a sophisticated consumer of insurance services cannot be denied, and it should be held

to its agreement, including the Damages Limitation Clause.

---

[7] *See* Opp. 14-21 (citing, inter alia, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 295–96 (2002) (arbitration agreement between employer and employee to which EEOC was not a party does not limit EEOC statutory remedies under the American's with Disabilities Act); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58 (1995) (enforcing agreement that punitive damages would be available in arbitration and holding, as Defendants argue here, that "the FAA ensures that [the parties'] agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration"); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 599 (1991) (in case that does not concern arbitration or the FAA, enforcing forum selection clause on cruise ship ticket issued to passenger alleging slip-and-fall injury, holding that Florida judicial forum does not violate the U.S. maritime law at issue); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628–33 (1985) (reversing decision that invalidated agreement to submit U.S. antitrust claims to international arbitration, and holding "there is no basis for assuming the forum inadequate or its selection unfair"); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 745 (1981) (holding arbitral procedures improperly limited nonwaivable employee rights for minimum wage claim under the Fair Labor Standards Act (FLSA)); *Graham Oil Co. v. ARCO Prod. Co.*, 43 F.3d 1244, 1247-48 (9th Cir. 1994) (invalidating arbitration procedures in petroleum franchise agreement that required franchisee to forfeit "important statutorily-mandated rights" for gasoline distribution franchisees mandated by Petroleum Marketing Practices Act); *The Shipman Agency, Inc. v. TheBlaze Inc.*, 315 F. Supp. 3d 967, 974 (S.D. Tex. 2018) (severing arbitration provision's limitation on injunctive relief as violative of the Lanham Act); *Narayan v. The Ritz-Carlton Dev. Co., Inc.*, 140 Haw. 343, 353 (2017) (finding arbitration clause in homeowners' purchase agreements substantively unconscionable under Hawaii law); *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 230 (Tex. 2014) (contractual waiver of statutory remedies did not follow the "detailed instruction on how to accomplish this" under Texas law, such as bold-face type and minimum font size, and thus is contrary to public policy; *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 682–83 (Cal. 2000) (contract requiring employees to waive rights to redress sexual harassment or discrimination under the California Fair Employment and Housing Act (FEHA) in favor of arbitration was contrary to public policy and unlawful); *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1539–40 (Cal. Ct. App. 1997) (finding unconscionable arbitration clause that forfeited employee remedies in employment disputes in violation of California Fair Employment and Housing Act (FEHA) and federal anti-discrimination statutes); *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 553, 593 (1992) (in case that has nothing to do with arbitration or the FAA, declining to enforce exculpatory provision absolving tortfeasor from its own gross negligence)).

## **CONCLUSION**

For all of the foregoing reasons, and the reasons set forth in the Opening Brief,

Defendants respectfully request that this Court stay this action and compel Plaintiff to arbitrate

the dispute pursuant to Plaintiff's Arbitration Demand and grant such other and further relief as it

deems just and proper.

Dated: New York, New York
       April 18, 2019

SIDLEY AUSTIN LLP


By:  /s/ *Andrew W. Stern*
     Andrew W. Stern (astern@sidley.com)
     Nicholas P. Crowell (ncrowell@sidley.com)
     Benjamin F. Burry (bburry@sidley.com)
     787 Seventh Avenue
     New York, New York 10019
     Telephone: (212) 839-5300
     Facsimile:  (212) 839-5599

*Attorneys for Defendant Lexington Insurance
Company*

ZELLE LLP


By:  /s/ *Brett A. Wallingford*
     Brett A. Wallingford
     (bwallingford@zelle.com) (admitted
     *pro hac vice*)
     901 Main Street, Suite 4000
     Dallas, Texas 75202
     Telephone: (214) 742-3000
     Facsimile:  (214) 760-8994

*Attorneys for Defendants AmRisc LLC, Certain
Underwriters at Lloyd's, London subscribing to
Certificate Nos. B123017AMR1042,
B123017AMR1139, and B123017AMR252
forming part of Policy No. AMR-37265-03;
Indian Harbor Insurance Co.; QBE Specialty
Insurance Co.; Steadfast Insurance Company;
General Security Indemnity Co. of Arizona;*

*United Specialty Insurance Co.; Lexington Insurance Co.; Princeton Excess & Surplus Lines Insurance Co.; International Insurance Co. of Hannover, SE; Axis Surplus Insurance Co.; RSUI Indemnity Co.; First Specialty Insurance Corporation; Arch Specialty Insurance Company; Evanston Insurance Company; and Rockhill Insurance Company;*

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP


By:   /s/ *Lance J. Kalik*
    Lance J. Kalik
    (twishert@riker.com)
    Headquarters Plaza
    One Speedwell Avenue
    Morristown, New Jersey 07962-1981

*Attorneys for Scottsdale Insurance Company*