UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>AMRISC, LLC; CERTAIN UNDERWRITERS AT LLOYDS, LONDON SUBSCRIBING TO CERTIFICATE NOS. B123017AMR1042, B123017AMR1139, AND B123017AMR252 FORMING PART OF POLICY NO. AMR-37265-03; INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY INSURANCE COMPANY; STEADFAST INSURANCE COMPANY; GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; UNITED SPECIALTY INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY; INTERNATIONAL INSURANCE COMPANY OF HANNOVER SE; AXIS SURPLUS INSURANCE COMPANY; RSUI INDEMNITY COMPANY; FIRST SPECIALTY INSURANCE CORPORATION; ARCH SPECIALTY INSURANCE COMPANY; EVANSTON INSURANCE COMPANY; ROCKHILL INSURANCE COMPANY; SCOTTSDALE INSURANCE COMPANY,<br><br>Defendants. | 19-cv-301 (ARR) (JO)<br><br>**Opinion & Order** |

ROSS, United States District Judge:

      This case comes before me on a motion to compel arbitration. Corpus Christi Independent School District ("CCISD" or "plaintiff") owns school buildings and property in Corpus Christi, Texas. Plaintiff's property, which is insured by defendants, was damaged during Hurricane Harvey. The underlying dispute involves a disagreement between the parties over the amount defendants owe to plaintiff under the terms of the insurance policy. On January 15, 2019, CCISD filed a complaint in this court, alleging a combination of arbitrable and non-arbitrable

1

claims. Defendants have moved to compel arbitration of all of plaintiff's claims. For the following reasons, defendants' motion is granted.

## BACKGROUND

On or about August 25, 2017, plaintiff's property was damaged by Hurricane Harvey. Compl. ¶¶ 34, 36, ECF No. 1. The property was insured by defendants. *See id.* ¶ 38. Following the hurricane, plaintiff submitted an insurance claim to the defendants for the property damage it had suffered. *Id.* ¶ 37. The underlying dispute between the parties involves a disagreement over the "extent and value of damages" owed to plaintiff under the terms of the insurance policy. *Id.* ¶ 75; *see also id.* ¶¶ 40–65.

On January 15, 2019, plaintiff filed the instant action. In Count I of the complaint, plaintiff asserts that the dispute over damages is "an issue to be arbitrated" pursuant to the arbitration agreement in the parties' insurance policy and asks this court to compel arbitration of the dispute. *Id.* ¶ 73, 75–77; *see also* Pl.'s Arbitration Demand, ECF No. 1-3. Defendants agree and note that since plaintiff filed its arbitration demand, "the Arbitration has continued to move forward as contemplated by the Parties' agreement." Defs.' Br. 1–2, 7, ECF No. 26. Plaintiff's complaint, while seeking an order compelling arbitration of the contract damages, also includes allegedly "non-arbitrable" claims. Count II requests a declaratory judgment on choice-of-law and damages issues. Compl. ¶¶ 78–86. Counts III–VIII assert additional common-law and statutory claims. *Id.* ¶¶ 87–152.[1]

---

[1] Count III alleges breach of contract under New York law, Count IV alleges breach of contract under Texas law, Counts V alleges violations of the Texas Unfair Claims Practices Act, Count VI alleges violation of the Texas Deceptive Trade Practices Act, Count VII alleges noncompliance with the Texas Insurance Code, and Count VIII alleges breach of the common-law duty of good faith and fair dealing. Compl. ¶¶ 88–152.

2

In seeking a declaratory judgment, plaintiff asks this court to weigh in on a dispute between the parties regarding a provision in the arbitration agreement. *See, e.g.*, Pl.'s Opp'n 3–4 & n.1, ECF No. 34. The arbitration agreement reads, in relevant part:

> All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.
>
> . . . .
>
> The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of the insurance.
>
> The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

Insurance Policy 29–30 [hereinafter Arbitration Agreement], ECF No. 3-5. Plaintiff concedes that the first provision of the agreement constitutes a valid arbitration clause. *See, e.g.*, Pl.'s Opp'n 6. Plaintiff, however, takes issue with the last provision stating that the arbitrator "may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature" (hereinafter the "damages limitation clause"). *Id.* at 4. Plaintiff argues that the damages limitation clause is "prohibited, unconscionable, and against public policy." *Id.* at 7.

On March 22, 2019, defendants moved to stay this action and compel arbitration of all of plaintiff's claims. *See* Defs.' Br. Defendants argue that plaintiff's claims, including its challenge to the damages limitation clause, must be resolved by the arbitrator. *See id.* at 3; *see also* Defs.' Reply 2, ECF No. 40. Plaintiff opposes defendants' motion and asks that the court issue "a declaration of CCISD's rights and remedies as to its extra-contractual claims or in the alternative, stay the declaratory judgment action until after the contract claims have been

arbitrated." Pl.'s Opp'n 25. For following reasons, defendants' motion to compel arbitration of all of CCISD's claims is granted.

## DISCUSSION

Under the Federal Arbitration Act, 9 U.S.C. §§ 1–14, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the] . . . district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. In determining "whether to send a dispute to arbitration . . . , a court must determine '(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BMC Stock Holdings, Inc.*, No. 18-CV-5777 (JPO), 2018 WL 6329401, at *3 (S.D.N.Y. Dec. 3, 2018) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)). These "gateway matters" are typically resolved by the court. *See McCoy v. Dave & Buster's Inc.*, No. 15-CV-0465 (JFB) (AYS), 2018 WL 550637, at *4 (E.D.N.Y. Jan. 24, 2018) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S.444, 452 (2003) (plurality opinion)). Parties can, however, agree to arbitrate gateway issues of arbitrability, if they have "'clearly and unmistakably' delegated to an arbitrator the authority to resolve [such] issues." *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). A clear and unmistakable agreement to arbitrate gateway matters is referred to as a "delegation clause." *See Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1264 (S.D. Fla. 2019).

### A. Because the insurance policy contains a delegation clause, any dispute over the validity of the arbitration agreement is for the arbitrator.

Plaintiff argues, *inter alia*, that the arbitration agreement is substantively unconscionable because the damages limitation clause limits plaintiff's remedies. *See* Pl.'s Opp'n 18–21; *see also id.* at 9–14 (arguing that the damages limitation clause is ambiguous and reverse-preempted by the McCarran-Ferguson Act). Plaintiff's challenge to the arbitration agreement is a gateway issue. *See Kuehn v. Citibank, N.A.*, No. 12 Civ. 3287(DLC), 2012 WL 6057941, at *3 (S.D.N.Y. Dec. 6, 2012) ("[T]he threshold question of the enforceability of the arbitration agreement as a whole is resolved by the court and not by an arbitrator."); *Washington v. William Morris Endeavor Entm't, LLC*, No. 10 Civ. 9647 (PKC)(JCF), 2011 WL 3251504, at *4 (S.D.N.Y. July 20, 2011) ("When a party disputes the enforceability of an arbitration agreement, by arguing, for example, that the agreement is void because it is unconscionable, this is a gateway matter that is typically decided by the court." (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010)). Thus, the arbitration agreement must contain a valid delegation clause in order for plaintiff's challenge to the damages limitation clause to be resolved by the arbitrator. *See Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 47 N.E.3d 463, 474 (N.Y. 2016) ("[D]elegation clauses . . . are severable from larger arbitration provisions." (citing *Rent-A-Ctr.*, 561 U.S. at 71–72)); *Kuehn*, 2012 WL 6057941, at *3 ("[I]n light of a delegation agreement, a party's challenge to the arbitration agreement on unconscionability grounds is a dispute that must be resolved by arbitration . . . ." (citing *Rent-A-Ctr.*, 561 U.S. at 71–72)).

In this case, I agree with defendants that the insurance policy contains a valid delegation clause that "clearly and unmistakably delegate[s] the authority to adjudicate" plaintiff's claim to the arbitrator, Defs.' Reply 5. The relevant clause in the contract states, "All matters in difference between the Insured and the Companies . . . in relation to this insurance, including its

5

formation and validity, . . . shall be referred to an Arbitration Tribunal in the manner hereinafter set out." Arbitration Agreement, *supra*, at 29. The Second Circuit has found similar language sufficiently broad to delegate gateway issues to the arbitrator. In *PaineWebber Inc. v. Bybyk*, a brokerage firm and an investor entered into a client agreement, which included the following clause: "[A]ny and all controversies . . . concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement . . . shall be determined by arbitration." 81 F.3d 1193, 1195–96 (2d Cir. 1996). The court found the wording in this clause "inclusive, categorical, unconditional, and unlimited" and noted that "[t]he words 'any and all' are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration." *Id.* at 1199–1200 ("An objective reading of the Agreement, therefore, leads us to conclude that the parties intended to arbitrate issues of arbitrability."); *see also NASDAQ OMX Grp. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) ("We have found the 'clear and unmistakable' provision satisfied where a broad arbitration clause expressly commits all disputes to arbitration, concluding that *all* disputes necessarily includes disputes as to arbitrability." (citing *PaineWebber*, 81 F.3d at 1199)); *Shaw Grp. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (finding the parties demonstrated intent to arbitrate arbitrability by submitting "'[a]ll disputes . . . concerning or arising out of' the Representation Agreement to arbitration"). Thus, the parties' arbitration clause, which is broad[2] and submits "all" disputes to

---

[2] *See Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.*, No. 18 Civ. 10382 (CM), 2019 WL 760802, at *5 (S.D.N.Y. Feb. 6, 2019) (holding that the identical clause is "compulsory" and that "any such dispute must be arbitrated. Period. End of story"); *Ytech 180 Units*, 359 F. Supp. 3d at 1266 (stating that the identical clause "contains . . . a broad delegation of 'all' disputes"); *see also Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000) (describing a clause delegating "any controversy or claim between [the parties] arising out of or relating to" the agreement to arbitration as "a classically broad one" (alteration in original)); *Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 306 F. Supp. 2d 346, 356 (S.D.N.Y. 2004) ("The . . . Agreement plainly reveals the parties' intent to submit all disputes 'aris[ing] about this agreement *or any transaction relat[ing] to it*' to arbitration. This is indisputably a broad arbitration clause." (alterations in original) (footnote omitted)).

6

arbitration, constitutes a valid delegation clause under Second Circuit law.[3] *See also Ytech*, 359 F. Supp. 3d at 1265–66 (analyzing the identical clause under Eleventh Circuit law and concluding that "the only reasonable interpretation is that the Parties 'clear[ly] and unmistakabl[y]' agreed to give an arbitrator exclusive authority to resolve *any* dispute relating to the Policy" (alterations in original)).

The only qualification in the delegation clause is that the dispute must be "in relation to this Insurance." Arbitration Agreement, *supra*, at 29. Given that the relationship between the parties is an insurance relationship, nearly all disputes will fall under this umbrella. *See Shaw Grp.*, 322 F.3d at 121–22 ("In this case, the parties' duty to arbitrate 'all disputes' is qualified only by the requirement that the matter be one 'concerning or arising under' the Representation Agreement. The dispute that brings the parties before us undoubtedly concerns the Representation Agreement in that it focuses on (1) whether moving for a court stay of arbitration constitutes a breach of [the agreement], and (2) whether attorneys' fees and costs constitute compensable damages for such a breach."). Similarly, the instant dispute over the damages limitation clause unquestionably relates to the insurance. First, it touches upon the appropriate award of damages for an alleged breach of the insurance contract. Second, it involves the validity of a provision of the arbitration agreement *within* the insurance contract. The delegation clause in this case explicitly refers disputes over contract validity to the arbitrator. *See* Arbitration

---

[3] I note that one district court in this circuit found that nearly identical language did not demonstrate "'clear and unmistakable evidence' that the parties intended the issue of arbitrability to be determined by the arbitrators." *Trenwick Am. Reinsurance Corp. v. Unionamerica Ins. Co.*, No. 3:13cv94 (JBA), 2013 WL 3716384, at *4 (D. Conn. July 12, 2013) (reasoning that "the issue of *who* decides arbitrability is not specifically addressed"). The Second Circuit, however, has held that "even absent an express contractual commitment of the issue of arbitrability to arbitration, a referral of 'any and all' controversies reflects such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to arbitrate issues of arbitrability.'" *Shaw Grp.*, 322 F.3d at 121 (quoting *PaineWebber*, 81 F.3d at 1199–1200). Thus, I respectfully decline to follow the court's reasoning in *Trenwick*.

7

Agreement, *supra*, at 29 (referring to arbitration "[a]ll matters in difference between [the parties] in relation to this Insurance, *including its formation and validity*" (emphasis added)). Thus, the parties have clearly and unmistakably agreed to send the dispute over the damages limitation clause to the arbitrator.

When an agreement contains a valid delegation clause, "the Court must enforce this delegation [clause] unless the plaintiff has shown that the delegation [clause] itself is unenforceable." *Kuehn*, 2012 WL 6057941, at *4 (citing *Rent-A-Ctr.*, 561 U.S. 63); *see also Long v. Amway Corp.*, 306 F. Supp. 3d 601, 608–09 (S.D.N.Y. 2018); *Monarch Consulting*, 47 N.E.3d at 474. As defendants correctly note, "none of Plaintiff's arguments even refer to the delegation provision, let alone challenge its validity or enforceability." Defs.' Reply 7. In fact, in moving to compel arbitration of certain disputes, plaintiff concedes that the delegation clause is a valid one. *See, e.g.*, Pl.'s Opp'n 6 ("CCISD . . . moved this Court to compel arbitration on the issues regarding the dispute directly related to the contract of insurance per the Arbitration Clause . . . ."). Accordingly, "plaintiff's enforceability challenges . . . must [be] defer[red] . . . to the arbitrator." *McCoy*, 2018 WL 550637, at *8; *see also Raytheon Co.*, 306 F. Supp. 2d at 358–59 ("Because the parties conferred authority on the arbitrators to assess the arbitrability of the dispute, . . . [t]he arbitrators must decide whether this limitation [on damages] was agreed to by the parties and must also decide whether the agreement to arbitrate, with this limitation, is void based on considerations of public policy."). Further, because the additional claims in Count II are also for the arbitrator,[4] defendants' motion to compel arbitration of Count II of plaintiff's complaint is granted.

---

[4] Plaintiff claims there is a dispute "as to whether the statute of limitations to file suit is subject to New York Law or Texas law" and "whether New York law or Texas law is the proper law to decide the issue of extra contractual damages." Compl. ¶ 80. These are questions for the arbitrator. *See Howsam*, 537 U.S. at 85 ("[I]ssues of procedural

**B. Plaintiff's common-law and statutory claims fall within the scope of the arbitration agreement.**

Assuming the arbitrator does not determine that the damages limitation clause renders the entire agreement to arbitrate void, the remainder of plaintiff's claims are covered by the arbitration agreement. Where, as here, the agreement between the parties contains a broad arbitration clause (*see supra* note 2), "all issues that 'touch matters' within the main agreement [are] to be arbitrated." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d. Cir. 1987)). The strong federal policy in favor of arbitration requires courts to "compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (internal quotation marks and citation omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").

As defendants aptly argue in their moving brief, plaintiff's common-law and statutory claims plainly "touch matters" within the insurance agreement. *See* Defs.' Br. 18–20. Counts III, IV, and VIII are claims for breach of the insurance policy and violations of the common-law duty of good faith and fair dealing in connection with the alleged breach. *See* Compl. ¶¶ 87–107, 112–23, 146–52. These breach-of-contract claims clearly constitute disputes "in relation to this Insurance," Arbitration Agreement, *supra*, at 29, and thus must be arbitrated. *See, e.g.*, *China Media Express Holdings, Inc. ex rel. Barth v. Nexus Exec. Risks, Ltd.*, 182 F. Supp. 3d 42, 51

---

arbitrability, *i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."); *Ytech*, 359 F. Supp. 3d at 1265–66 & n.5 (holding that the identical delegation clause "give[s] an arbitrator exclusive authority to resolve *any* dispute relating to the Policy," including "[t]he determination of whether New York or Florida law applies").

(S.D.N.Y. 2016) ("[Plaintiff's] claims . . . are expressly premised on a breach of the insurance policies . . . . The claims involve the 'construction of the contract' and 'the parties' rights and obligations under it.' It is not a close question as to whether [plaintiff's] claims 'touch matters' covered by the [policies]. The claims go to the heart of the contract's terms and are therefore within the purview of the arbitration clauses in those policies." (citation omitted) (quoting *Collins & Aikman*, 58 F.3d at 23)).

Counts V, VI, and VII allege violations of Texas law. *See* Compl. ¶¶ 124–45. The substance of these claims, however, relates to the insurance agreement. *See id.* ¶¶ 127–28 (claiming, in Count V, that defendants have violated Texas law by "refusing to pay a claim without conducting a reasonable investigation with respect to that claim" and by "misrepresent[ing] the insurance policy to the CCISD"); *id.* ¶ 138 (alleging, in Count VI, that defendants have violated Texas law by misrepresenting the agreement, "[f]ailing to disclose information," "[e]ngaging in an unconscionable course of conduct," and "accepting insurance premiums but refusing without a reasonable basis to pay benefits due"); *id.* ¶ 143 (again alleging, in Count VII, that defendants have violated Texas law by "accepting insurance premiums but refusing without a reasonable basis to pay benefits due"). As defendants note, "[t]he fact that Plaintiff labels [its claims] as statutory violations is irrelevant; they are arbitrable because their underlying factual allegations touch on issues encompassed by the arbitration agreement." Defs.' Br. 19–20 (citing cases).

## CONCLUSION

For the reasons stated in this opinion, defendants' motion to compel arbitration is granted.[5]


SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:     May 9, 2019
              Brooklyn, New York

---

[5] Further, having reviewed the parties' submissions, I find oral argument unnecessary.